IN THE UNITED STATES DISTRICT COURT FOR
THE MIDDLE DISTRICT OF ALABAMA

RECEIVED

MARK TAYLOR #205567
Full name and prison number
of plaintiff(s)

2007 APR 30  A 9: 33

DEBRA P. HACKETT, CLK
U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

v.

Richard Allen et al.

CIVIL ACTION NO. 2:07CV 362-MHT
(To be supplied by Clerk of
U.S. District Court)

_____

_____

_____

_____

Name of person(s) who violated
your constitutional rights.
(List the names of all the
persons.)

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

I.    PREVIOUS LAWSUITS
      A.    Have you begun other lawsuits in state or federal court
            dealing with the same or similar facts involved in this
            action?  YES (   )  NO ( ✓ )

      B.    Have you begun other lawsuits in state or federal court
            relating to your imprisonment?  YES (   )  NO ( ✓ )

      C.    If your answer to A or B is yes, describe each lawsuit
            in the space below.  (If there is more than one lawsuit,
            describe the additional lawsuits on another piece of
            paper, using the same outline.)

            1.    Parties to this previous lawsuit:

                  Plaintiff(s)  Mark Taylor et. al

                  _____

                  Defendant(s)  Richard Allen et. al

                  _____

            2.    Court (if federal court, name the district; if
                  state court, name the county)  _____
                                                       N/A
                  _____

3. Docket number _____ *N/A*

4. Name of judge to whom case was assigned _____
   *N/A*

5. Disposition (for example: Was the case dismissed? Was it appealed? Is it still pending?) _____
   *N/A*

6. Approximate date of filing lawsuit _____

7. Approximate date of disposition _____

II. PLACE OF PRESENT CONFINEMENT *G. K. Fountain Corr. CENTER*
   _____

   PLACE OF INSTITUTION WHERE INCIDENT OCCURRED _____ *''*_____
   *''*

III. NAME AND ADDRESS OF INDIVIDUAL(S) YOU ALLEGE VIOLATED YOUR CONSTITUTIONAL RIGHTS.
           NAME               ADDRESS

   1. *Richard Allen et al.* _____

   2. _____

   3. _____

   4. _____

   5. _____

   6. _____

IV. THE DATE UPON WHICH SAID VIOLATION OCCURRED *June 1999*
   _____

V. STATE BRIEFLY THE GROUNDS ON WHICH YOU BASE YOUR ALLEGATION THAT YOUR CONSTITUTIONAL RIGHTS ARE BEING VIOLATED:

   GROUND ONE: _____ *SEE Attached*
   _____

STATE BRIEFLY THE FACTS WHICH SUPPORT THIS GROUND.  (State as
best you can the time, place and manner and person involved.)

_SEE Attached Sheets_

GROUND TWO: _SEE Attached sheets_

SUPPORTING FACTS:

_SEE Attached sheets_

GROUND THREE:

SUPPORTING FACTS: _See Attached sheets_

3

VI. STATE BRIEFLY EXACTLY WHAT YOU WANT THE COURT TO DO FOR YOU. MAKE NO LEGAL ARGUMENT.   CITE NO CASES OR STATUTES.

_SEE Attached Sheets_

_____

_____

Mark Taylor

Signature of plaintiff(s)

I declare under penalty of perjury that the foregoing is true and correct.

EXECUTED on 4/25/07

(Date)

Mark Taylor

Signature of plaintiff(s)

4

(2). The petitioner avers, that the Alabama Correctional Incentive
Time Act,[14-9-42], Code Of Alabama. Acts 80-446) violates admini-
strative procedures, violates state constitutional requirements
for passage of legislation or federal protection and "Due Process"
guaranteed in the way that it has and still being administered by
selective implentmentation through the department of corrections
classification and administrative department.

(3). Acts 80-446, violates Article 4, of the alabama constitution
because it contained a provision which broaened the scope of the
act beyound that expressed in the title.

(4). Acts 80-446, violates Article 4, 61, of the alabama constitu
tion (1901), because an amendment to the act changed the original
purpose of the act.

(5). Acts 80-446, On its face, violates the "Equal Protection"
guarantees of the fourteenth amendment, Article 4, each law shall
contain one subject, which shall be clearly expressed in this
title,[in its title].

## HABITUAL FELONY OFFENDERS

Acts 80-446 Prohibited habitual felony offenders from receving
any deduction from their sentence...... however, in 1991 this
act was in effect from a earlier legislative passage (1981).
in 1991 the "GOODTIME INCENTIVE ACT" 14-9-41 was amended, this
amended act allowed inmates with 15 years or less to receive the
benefits of receiving Incentive Goodtime Credits, this amendment
also allowed Habitual Felony Offenders to receive Goodtime Credits
and a deductions from their sentence, this amended act was,viola-
tion of Acts 8-445.

2.

(6). Acts[80-446], Codified in (14-9-41) Code Of Alabama reads,..

(a). Each prisoner who shall thereafter be convincedd of any of-fense against the laws of the state of alabama and is confined, in the exexution of judgement or sentence upon any conviction, in the penitentary or at hard labor for the county or any municipal jail for a definite or inderterminate term, other than for"life" whose record of conduct shows that he has faithfully observed the rules for a period of time to be specified by the article may be entitled to earn a deduction from the term of his sentence as follows:

(1). SEVENTY-FIVE (75) DAYS FOR EACH 30 DAYS ACTUALLY SERVED WHILE THE PRISONER IS CLASSIFIED AS A CLASS (1) ONE PRISONER,

(2). FORTY (40) DAYS FOR EACH (30) DAYS ACTUALLY SERVED WHILE THE PRISONER IS A CLASSS(2) PRISONER,

(3). TWENTY (20) DAYS FOR EACH (30) DAYSDSERVED WHILE THE PRISONER IS A CLASS (3) THREE PRISONER,

(b) Within 90 days after May 19, 1980. The Commissioner of the Department Of Corrections shall establish and publish appropriate directive certain criteria not in conflict with this article for class 1,2,3, and 4 prisoners, classification shall encompass con-sideration of the prisoners behavior, discipline, anddworl: pratice and job responsability(s).

(7). The petitioner avers, that he is being denied googtime credi dits based soley on the langht of his sentence 14-9-41(e), Yet, he has been classified at one time or another during nis incarcerati tion as a class 1,2,3, and 4 prisoner, the petitioner has been to WORK RELEASES","HONOR CAMPS" WORK CAMPS", throughout his incarcera tion, he has proven though the years to be cooperative and respect authority, work hard on every detail, and has proven to be "trust worthy",  the petitioner did not receive any GOODTIME CREITS while in those classes.

(8). The commissoner has implemented a policy in classifying pri-
soners to a certain class...class 1,2,3 and 4. When a prisoner is
placed in either class of the above classes there is a procedure
and policy that the prisoner must comply with to enter that class
and a policy that the prisoner must obey in order to stay in that
class or move to a higher but less restrictive class, Each class
is implemented around a inmates behavior, disciplinary history,
discipline and ability to work, each class affords that prisoner
a certain amount of goodtime to be earnedfand a deduction from his
sentence while in that particular class, the department of correc-
tions is placing prisoners in those classes, but are denying to
them the goodtime while in that class, that is afforded to them
by that class, 14-9-41 of the code of Alabama,[14-9-42] of the
code of Aalabama governors the amount of "goodtime" credits each
prisoner must earn or can earn while in a particular class, this
section also governors the amount of time a prisoner must remain
in a particular class before being elligible for a lesser restric-
ted class. Prisoners are being placed in class 1,2, and 3 under a
condition that has been imposed, and implemented, by the Alabama
legislature which governors the prisoners conduct, behavior, and
ability to adjust to prison "life", however, prisoners are being
denied the benefits to receive inuentiue "goodtime" credits in
that class by the department of corrections, even though each
class affords prisoners the privelege to receive those credits,
prisoners with "SEX" crimes and"VIOLENT" offenders receive the
benefits of goodtime credits while in those classes and a deduc-
tion from their sentence, while prisoners with "non violent" are
property crimes are being denied goodtime credits are any reduc-
tion from their sentence while in those classes... The inmates
which are supposed to be prohibited from earning goodtime credits
are"Habitual offenders" those convicted of a class "A" felony and
"Trafficking" are in fact the very one's that is receing good-
time credits.

4.

(9). Acts 80-446, codified in 1409-41 (code of Alabama) reads:

(1) Classs1- Is set aside for those prisoners who are (considered), to be"trustworthy" in every respect and who, by virtue of their work habits, conduct an attitude of cooperation, have proven their trustworthiness.... an example: of a class 1 prisoner is one who cpould work wothout constant supervision by a security officer.

(2). Class 2: Is that category of prisoners who will be under the supervision of a correctional employee at all times. any inmate shall semain in this class for a minimum period of (6) six months before being elligiable for class 1.

(3). Class 3: Is set aside for prisoners with special assignments. they may not receive the priveleges of class 1 and 2 prisoners, a any inmate shall remain in this classification for a period of the minimum of three months before being elligible for class (2) two.

(4). Class 4: Is for those prisoners yet, not classified and for those who are able to work and refuse, or who commit disciplinary infractions of such nature which do not warrant a "higher Classifi-cation", inmates that are classified in this earning class receives "NO" "CORRECTIONAL UNCENTIVE GOODTIME". thos class is generally referred to as "FLAT TIME" or "DAY FOR DAY". Any inmate shall re-main in this classification for a minimum of thirty (30) days be-fore being elligible for class (3) three.

  There is nothing contained in class 1,2, Or three which prohib bits a prisoner from receiving goodtime credits while in that class, Yet, the department of corrections are denting inmates goodtime while in class 1,2, or 3 based soley on the lenght of their sen-tence without any consideration to the "seriouness" of their of-fense, crimes or convictions, prisoners that have been prohibited from earning goodtime by the legislature deeming their crimes to serious to receive beneficiary treatment are receing goodtime by the departamth of corrections while in class 1,2, or 3.......
[SEX OFFENDERS AND CHILD MOLESTORS SHOULD NOT RECEIVE AND REDUC-TIONS FROM THEIR CONVICTION AND SENTENCE]/............

(11). The petitioner avers, that he is being denied "Equal Protec-
tion" of the law Under 14-9-41, subsection (e) because, he has been
sentenced to a term of (20) twenty years for the charge of theft
of property 1st degree..

(A). Example; the legislature amended section (15-18-8 code of Ala-
bama) May 19, 2000. to allow prisoners that are sentenced to a
term of imprisonment 20 years or less to have their sentences split
yet, the legislative obviously deemed the nature of their offenses
to serious to merit the benefits of receiving goodtime sentence re-
ductioons. It is reasonable to assumed that the legislature also
concluded that anyone who received a sentence innthe class"A" felo-
ny range would not merit beneficial treatment...... When a prisoner
is convicted of a class "A' felony and receives a sentence of 20
years and have that sentence split to serve three years incarcera-
tion and the maximum years of probation of five(50 years, that pri-
soner will be allowed to complete his entire twenty (20) years sen-
tence in eight (8) years without any futher supervision by the
state of Alabama, however, when a prisoner is sentence to that
same term of imprisonment and does not have his or her sentence
split under the split sentance act, that prisoner will have to
serve his entire sentence either on parole, if paroled, or in the
department of corrections...When 15-18-8 split sentence act was a
mended, the goodtime incentive act 14-9-41 of the code of Alabama
should have also been amended in order to bring the same prisoners
and less violent prisoners within the same category of sentence
reductions under "Equal Protection" of the law.

(1). One of the purposes of the requirement of this section 45, (
supra), that the subject of law shall be clearly expressed in the
title, is to prevent surprise or fraud upon the legislative by in-
corporating in "BILLS". provision not reasonably disclosed by its
title, and which might be overlooked, and unintentionally appro-
ved in enacting (THE BILL) 247 so 2d 195 ( 123 so 2d 505

6.

(2). The incentive goodtime credit statute is being applied arbi-
trary and selective by the department of corrections against legis-
lative intent.

(3). Prisoners are being denied goodtime soley on the length of
their sentence and not the seriouness of their offense.

(4). Inmates are classified under a behavior system. This system
classify(s) inmates and place them in a class 1,2, or three pri-
soner, each class provides inmates with e opportunity to receive
goodtime credits and a reduction of sentence.

(5). Repeated "SEX" offenders and repeated "VIOLENT" offenders re-
ceives benefits of incentive goodtime credits while the majority
of inmates with less serious crimes to include "non Violent" of-
fenses are been denied such incentives.

(6). Inmates are "categorically" denied goodtime by the department
of corrections which is in violation of the legislature intent...
SEE: [Lopez V. Davis].

(A). Act 80-446 Violates Alabama constitutional amendment: section
61 by its 1991 amendment,
       Acts 80-446 "Incentice Goodtime Credits" was passed in 1980,
by the Alabama Legislature, the "Bill" denied goodtime credits to
prisoners who has been sentenced to "life" or "Death", Subsection
(e) broadened those credits to deny prisoners woo have been con-
victed of a class "A" felony, those who receive a sentence of 10
yearsxtprisomssthat has been convicted of assault in where the
victim suffered permanent loss or permanent loss or partial loss
or use of a bodily organ or appendage, those that has been convic-
ted of sexual assault upon a "child" under 17 years old or prohi-
bited from receiving good time credits,[sexual assaults under the
age of 17 or prohibited from entering class 1 earning statutes but
are not prohibited from earning goodtime credits].

                                   8.

The habitual offenders act of 1981 also prohibited prisoners that
has been sentenced as a habitual offender from receiving any re-
duction from sentence. Habitual offenders was not the only class
that was prohibited from earning goodtime by the legislature sta-
tute, Inmates who receive a sentence of 10 years or more and
those inmates who receives a sentence in the class "A" felony was
also precluded. [minimum sentence a habitual offender can receive
is 15 years].

Act 80-446 was amended from 10 years to 15 years act of July 31,
1991. No. 91-637, codified at Ala. code 14-9-41 (e) Act 1201 effec-
tive october 29, 1991. The act was amended because the prisone
system was "Dangerious Overcrowded" with habitual offenders, When
this act was amended it "Drastically" changed the purpose of the
act, The amendment allowed the habitual and repeated habitual felo-
ny offenders the benefits of receiving goodtime credits and a re-
duction from their sentence in violation of legislative intent...
[this was totally against the lagisltive purpose of passing the
act. The legislative in passing act 80-446 made it be known that
habitual felony offenders would not receive any goodtime or reduc-
tion from sentence pursuaint to this act.[This] amendment was also
applied retroactively... when the act was amended to allow goodtime
credit and a reduction from sentence, this amendment also denied
inmates "Equal Protection" of law when this amendment did not grant
inmates who was habitual felony offenders with sentences of 15
year or more, the legislative not only denied habitual offenders
good time but also denied prisoners who was convicted of a class
"A" felony or received a sentence in the class "A" felon range.
[when a prisoner receive a sentence of 10 years or more doesn't
means that, that person has committed a serious offense.

9.

Brroks V. State 622 so 2d 447 (reversed and remanded) denial of
goodtime credits violated prisoners "equal Protection" when the
reason for such denial was based soley on the time of conviction
and not determination about the nature or the seriouness of the
offense. The court observed that it was rational to deny goodtime
benefits to both class "A" felony(s) and those who has been sen-
tebced to 10 years or more, because the latter group receives a
sentence in the class "A" felony range, and therefore, could be
considered as "Serious Offender"X the minimum sentence for a class
"A" felony is 10 years, Alabama Code 13 A-5-6..are... inelligable
for goodtime because the legislature deemed the nature of their
offense to serious to merit the benefits of goodtime sentence re-
duction, it was reasonably assume that the legislature also conel
cluded that anyone who received a sentence in the[legislature ait]
class "A" felony range would also not merit beneficial treatment.
Thomas V. State 552 so 2d 875. Gaines V. State 581 so 2d 448, The
supreme court concluded that there is a "perceivable" set of facts
under which a statutory discrimination against "Sex Offenders" is
revelant to and justified by permissible legislative purpose, that
perceivable set of facts includes the possibility that a convicti
tedn sex offenders who is not rehabilitated might be released early.

When the legislature amended 14-9-41 (e) in 1991 from 10 years to
15 years it qualified the habitual felony offenders to receive
goodtime credits, this amended act came in conflict with prior
legislative law which prohibited habitual offenders from receiving
goodtime, this amendment also expanded the goodtime eligibility to
include inmates sentenced to longer prison terms presumably for a
more serious crime. 275 Ala 254 opinion of justice.....one of the
purpose of the requirement of section 45, supra, that the subject
of a law shall be clearly expresses in its title, to prevent su-
prise or fraud upon the legislature by incorporating its bill pro-
vision not reasonably disclosed by its title, and which might be
overlooked. Kendrick V. Boyd 255 Ala. 53, so 2d 694 Taylor V. john
son 265 Ala. 541.

Ex-Parte Hilsabeck 477 so 2d 472. The purpose of act 80-446, is c
clearly expressed as one to establish the "alabama Correctional"
Incentice Act", that alone state that the legislatuoa deals with
goodtime for prison inmates, the next title respectfully, states
that the act establishes "certain criteria" for earned deductions
and creates "classifications for measurment of such deductions
and eligibility thereof (habitual offenders) are mention as one o
of the groups excluded from earning goodtime credits..... Act 80-
446 violates article 4 section 61, of the Alabama constitution
section 61 provided "no law shall be so altered or amended on its
passage through either house as to change it original purpose.

Acts 80-446 was made clear and unambigious in its provisions when
uoa was injected into the act when its provisions was
attempted to be broaned or expanded the lanuage of the act.

[Ricket V. State 903 F, 2d 447] Selective and disparate treatment
violation of equal protection. [impermissable classification]
Wayne V. State, 84 L.ed 2d 547.

Aalabama deals with a racial classifiaction system embodied in
a criminal statute the 1991 amendment does not order theseex-
clusions by defining the statutory terms of prisoners convited
of "non Violent" offenses or the cognate terms 'crimes of violence
instead, the current regulation relies upon the discretion allo-
ted to the commissioner of the department of corrections in grant-
ing a sentence reduction to exclude categories of inmates, the
administartion regulation, designed to achieve consistent admini-
strative of the incentive, now provides,

(1). Inmates who are sentenced to 15 years are less to include
habitual felony offenders the privelege of receiving goodtime
credits and allowed violent offenders with longer prison terms
that was prohibited by the legislative to receive goodtime under
the new amended act.

inmates with less serious crimes and property crimes are being de-
nied goodtime credits based soley on the lenght of their sentence,
they are also "Bracketed" in a category with violent offenders be-
cause the department of corrections suggests that they poses a
particular risk to the public...while cedric has been incarcerated
he has been classified as a vlass 1, 2, and 3, prisoner at some
point during his incarceration to include "three" years at "work
release", but has been categorically denied the benefits of good-
time while in these class.

The question to be answered pertaining to this fact of law is;
could the department of corrections place a inmate in a category
which grants goodtime credits and then deny that inmate goodtime
credits based soley on the lengt of his sentence without considar-
ation as to the seriouness of the crime, this kind of selective
action by the department of correction is what cause the statute
to be ambigious[unambigious] and deny him "equal protection" and
"due process" of law. If the legislature wanted the department of
corrections to reduce the category of inmates eligiable for early
release incentive (beyond the ones indentified by the legislature)
the legislative would have specifically placed this grant of autho-
rity in the language of the statute, and if the department of cor-
rections have discretion to deny early release to some inmates, b
but only based on a inmates sentence and not the factors therin,
then the agency cannot categorically deny early release even to t
the recidivist with prior, or perhaps "mutiple" convictions of
"Rape" &Roobery," Homicide" or any other crime of violence..The
Question to this issue is?

Did the legislature of Alabama intended for all inmates to receive
some reduction from their sentence who has been convicted of a non
violent crime?

Did the Alabama Legislative intend for "SEX" offenders and repeated
"VIOLENT" offenders to receive goodtime credits and receive a
early release from prison?

Did the legislature intend for Habitual Felony Offenders to receive
goodtime credits and a early release from their sentence?

Did the legislature intend to allow inmates with sex offenses, and
violent offenses to receive the benefits of goodtime credits, and
deny inmates with property offenses this benefits based soley on
the lenght of a person sentence and not the seriouness of their
offense?

We deal here with a ambigious statute, which grants goodtime cred
dits to the majority of "sex" offenders and denies goodtime to a
majority of inmates who has been convicted of less serious crimes
where the powereof the state weighs most heavily upon the individ
duals or group, we must be especially sensitive to the policies
of the equal protection clause which, reflected in legislative
enactments dating from 1870, were intended to secure "Full and
equal benefits of all laws and proceedings for the security of per
sons" to like punishment, pains, penalties, taxes, liscenses, and
exactions of every kind, and to others.
     When the law lays an unequal hand on those who have committed
instrincically the same quality of offense and sterilize one and
not the other, it has made invidious a discrimination as if it had
selected a particular race or nationality for oppresive treatment.
          [YICK WO V. HOPKINS 30 L.ed 2d 220]
subsequent legislation declaring the intent of an earlier statute
is entitled to significant weght....although a mistaken opinion of
the legislature concerning the meaning of an earlier statute does
not itself make law, such an opinion must nevertheless be given
the effect of law, proppectively if it is expressed in words com-
petent to make law, since it is within the power of the legisla-
tive for the future, although inoperative as to the past.

the pronouncement of legislative committee respecting, the meaning
of a previously enacted statute was entitle to consideration weight
in the judicial construction of the statute, where the committee
in question was the one which had reported the bill on which the
statute was based.[Quern V. Mandley 59 L.ed 2d 134 918] See; also
[McLaighin V. Florida 13 L.ed 2d 222][Brown V. Dubchasne, 15 L.ed
2d 595[NLRB V. Bell Aerospace Co. 40 L.ed 2d 134][prounouncement
of legislature 56 L ed 2d 918][Statutory Generally 41 L. ed 2d 134[
Thorton V. Hunt 852 F. 2d 526][95 A.L.R. 2d 1256][Brooks V. State
622 so 2d 477][Classification of inmates][Construction of law][Co'
nlogue F. Shinbaum p49 F. 2d 373][Fraxier V. Munson 703 L.ed 2d 30]
[Faulkner V. State, 586 so 2d 39][Hilsabeck]Exparte Hisalbeck 477
so 2d 465][Eckiniss 35 L. ed 2d Acts 231 Ala. Exparte Ashton.
Korosaka V. Belford 41 L. ed 2d 374]............................


S                        "SEX OFFENDERS"


McKune V. Lile (2000) 536 us 24, 153 L.ed 2d 47, "Sex Offenders"
.....SEX OFFENDERS are serious threat in this nation, in 1995, an
estimated 355,000 rapes and sexual assaults occured nationwide.
U.S. Department Of Justice, bereau of justice statistics, sex
offenders offenses reported between 1980 and 1984, the population
of imprisonment of sex offenders increased at a faster rate than
any other category of violent offenses.[violent crimes]. As in most
sexual cases, the victim of sexual assault are most juveniles. In
1995, for instance, a majority of the reported forcible sexual
offenses were committed against persons under 18 years of age....
[University of New Hampshire] crimes against children, research
center fact sheet. Nearly 4 out of 10 imprisoned, violent sex of-
fnders said their victims was 12 years of age or younger.... when
convicted sex offenders re-enter society, they are much likely to
re-offend, be re-arrested for a new rape or sexual assault.

LOPEZ V. DAVIS 531 u.s 230, 148 L.ed 2d 635, 121 S.ct 714

Tiltle[18 USC & 3621] Governs the imprisonment of persons convicted
of federal crimes. In 1990 congress amended the statue to provide
that the Bereau shall....make available appropriate substance abuse
treatment for each prisoner the Bereau determines has a treatable
condition of substance addiction or abuse, Four years later, con-
gress again amended 3621, this time to provide incentives for pri-
soners participating in the program. The incentive provision of
that section reads:" the period of a prisoner convicted of non-
violent offense remains in custody after successfully completing a
treatment program may be reduced by the Bereau of prisons, but such
reduction may not be more than one year from the term the prisoner
must otherwise serve.

In 1995, The Bereau published a rule to implement the early release
incentive. 60 Fed reg 27693-27695; 28 CFR & 550. 58. Because the
statute explicitly confined the incentive to prisoners convicted of
"non-violent offenses" 19 U.S.C & 3621(e) (2) (b), the BCP ranked
ineligable for early release all inmates currentlytincarcerated
for crimes of violence. 60 Fed Reg 27692. As explained in the BOP
program statement, the BOP defined "crimes of violence' to include a
drug trafficking conviction under 21 USC.
3621 (e)(2)(B) required the bureau to look into only the offense of
conviction (Drug TRafficking), and not to sentencing factors (Fire
arm Possession), in determing whether an offender was convicted of
a "non violent offense", and therefore elligable under the statute
for the early release incentive.

In contrast to the earlier rule. However, the 1997 regulation does
not order this esclusion by defining the statutory term prisoner
convicted of a'non-violent offense' or the cognate term crimes of
violence'. instead, the current regulation relies upon' the discre-
tion allotted to the director of the bureau of prisons in granting
a sentence reduction to exclude categories of inmates. The regula-
tion, designed to achieve consistent administration of the incen-
tive, now provides,

15.

(a) ADDITIONAL EARLY RELEASE CRITERIA.(1). As an exercise of the
discretion invested in the director of the BOP, the following
category of inmates are not elligiable for early release.

"(iv) Inmates who have a prior felony are misdeamenor conviction
for homicide, forciable rape, robbery, aggravated assault, or child
sexual abuse offenses;

"(vi) Inmates whose currently offense is a felony:

(B) That involved in carrying, possession, or use of a firearm
or other dangerious weapon...... To the Bereaus asserted disraction
to prescribe additional early release criteria. Drug trafficking
who possess firearms when they engage in crimes are no longer charac-
terized as "violent offenders" within the meaning of the statute.
But they are bracketed, for the sentence reduction purposes with
persons currently incarcerated for "non violent" offenses who in
the pass committed crimes that qualified as violent. The preconvic-
tion conduct of both armed offenders and certain redicivist in the
Bereaus's view, suggest that they pose a particular risk to the pu-
blic.... In 1997, petitioner Christipher A. Lopez was convicted of
possession with the intent to distribute methamphetamine in viola-
tion. Upon finding that lopez possessed a firearm in connection w
with his offense, the district court enhanced his sentence two le-
vels.

While incarcerated, Lopez requested substance abuse treatment.
The Bereau found him qualified for the resident drug treatment pro-
gram, but categorically inelligable for early release. The court
reversed. Bellis V. Davis 196 F 3d 1092 (199). The statute provides
the period a prisoner convicted of a non-violent offense remains in
custody after successfully completing a drug treatment program may
be reduced by the BOP.
The measure thus catergorically denies early release elligibility
to inmates convicted of violent offenses. The question we address
is whether the Bereau has discretion to delinate, as an additional
category of inelligible inmates, those whose current offenses is
a felony conviction involving a firearm.

16.

Lopez urges that the statute is anambigious, he syas that. by iden-
tifying a class of inmates inelﬁgiable for sentence reduction under
3621 (e) (8) (B), those convicted of a violent offense, congress
has barred the Bereau from identifying futher categories of ineligi-
able inmates. If congress wanted the BOP to reduce the category of
inmates eligiable for the early release incentives (Beyound the ones
identified by congress) Congress would have specifieally placed this
grant of authority in the language of the statute'. Congress used
the word "May" rather than "Shall", has no signifiance. And if the
BOP does have discretion to deny early release to some inmates, but
categorically deny early release even to the recidivists with prior
(Perhaps Mutiple) convictions of rape, robbery, homicide etc, for
that provision, as much as the esclusion of inmates imprisoned for
the offense involving a firearm, entails no individualized determi-
nation based on postconviction conduct. ( A prisoner serving a term
of one year and less than "life" may receive credits toward the
service of the prisoners sentence....subject to determination by
the BOP that, during that year, the prisinor has displayed exemplary
compliance with such institutional disciplinary regulations"0.

   The question at issue in this case is whether congress merely
intended for some, of federal prisioors who were convicted of non-
violent crimes and who has successfully completed a Bereau of pri-
soners drug treatment program are eligiable for a sentence reduct-
tion..... The court stated; I believe congress has answered the
precise question. The statute expressely states that the sentence
of every prisoner in that category "May Be Reduced", both the
text of the statute and the aforemention history demonstrate that
congress directly addressed the precise question of what offenses
ought to be disqualified and prisoners disqualification for eligi-
ablﬁity for sentence reduction, and its "unambigious answer was
"violent offenses", under the statute as enacted, those who com-
mitted crimes of violence are categorically barred from receiving
sentence reduction while those convicted of non-violence offenses
"May" receive such an inducement.

17.

The question at issue in this case, is whether congress merely intended for some of federal inmates who were convicted of non violent crimes and who has successfully completed a bureau of prisoners drug treatment program are eligible for sentence reduction...the court stated; I believe congress has answered the precise question.  The statute expressly states that the sentence of every prisoner in that category "may be reduced", both the text of the statute and the aforementioned history demonstrate that congress directly addressed the precise question of what offense ought to be disqualified and prisoners disqualification for eligibilty for sentence reduction, and its "unambigious answer was "violent offenses".  Under the statute as enacted, those who committed crimes of violence are catergorically barred from receiving sentence reduction while those convicted of none violent offenses "may" receive such inducement.

## HISTORY

Plaintiff, Mark Taylor #205567, is an inmate at G.K. Fountain Correctional Facility.  Plaintiff is serving a term of twenty (25) years for 3 counts of attempt Murder, one count of shooting into a motor vehicle.

Plaintiff, Mark Taylor #205567, was sentenced to twentyfive (25) years imprisonment in the Jefferson County Circuit Court on or about June 1999, and has been at one time or another, a class 1,2, and 3 inmate, but have been denied the benefits of those class(s).

## RELIEF SOUGHT

Plaintiff seeks declaratory judgment against the defendant(s) to determine whether the defendant(s) are constitutionally in violation of §14-9-41, code of alabama, when they illegally amended subsection (e) to the pre existing statute thereby conflicting with the clear legislative intent of the aforementioned statute.

Done this the ___25th___ day of ___April_____ 2007.

LEGAL

MARK TAYLOR
I.S. 265567
Fountain 3800
Athmore, Al. 36503

United States District Court
Middle District of Alabama
P.O. Box 711
Montgomery, Al. 36101-0711

UNITED STATES POSTAGE
$ 00.39
0004309410    APR 26. 2007
MAILED FROM ZIPCODE 36502
02.1A1